Good morning, Your Honors. My name is John Colvin, and I represent the appellants. You can speak just a little bit louder, please. Thank you. My name is John Colvin, and I represent the appellants in this case. I'd like to reserve two minutes for rebuttal. This case involves two issues, the first of which is whether certain tax-shelter penalties abate at death. The foundational case regarding the abatement of civil penalties is a Supreme Court case from the late In that case, there was a suit for civil penalties against a copyright infringer. The defendant died after the lawsuit was filed but before a judgment was issued. Citing common law, the Supreme Court ruled that actions on penal statutes do not survive death. Now, the question really here is, what does pedo mean for purpose of the survival of an action? In 1977, the Sixth Circuit addressed this issue in Murphy v. Household Finance. The Circuit recognized an exception to the general Schreiber rule on penalty non-survival. It determined that some penalties were remedial rather than punitive, and that those remedial penalties should not abate. It adopted a three-factor test for determining whether civil penalties were penal or remedial, and the factors are whether the statute is intended to address individual wrongs or wrongs to the public, whether the recovery runs to the harmed individuals or to the And third, whether the recovery is disproportionate to the harm caused. And the Murphy test is Here the government says that it has been harmed. It has all of the cause of the investigation, the loss of tax money. Well, here, I think it's clear that if a tax shelter is successful, if it is successful and it actually, you know, causes people to, you know, omit tax dollars and the government has to investigate it, the government ends up being harmed in that way. But the penalties at issue here are not measured by the amount of that harm, that they're measured by the flat $1,000 or $10,000 penalty. Now, against the individual taxpayers who may have followed bad advice in connection with a tax shelter, the penalties against those individuals are measured clearly by reference to the tax deficiency, that is, by the harm caused. But here the statute is penalizing the individual who put the plans together and sold them to people. That's clearly what the statute I mean, every statute that imposes a penalty is, you know, imposing it because it believes that there has been some harm to individuals or to the public. I think, you know, every penal statute will have those features. Just saying somebody's been harmed, I think, proves too much in this case. Because the issue really is whether it's remedial, whether it's compensating the government for the harm that it caused the government, or whether it's punishing the individuals who were doing the conduct that it believes was improper. The difficulty with these cases and these tests is we're just kind of like swimming around our tail, and they say, is it penal or is it not? What, in your view, is, if not a bright line, but at least some indicia as to whether it's penal or not? I think some of the indicia would be, for instance, is the penalty measured by the amount of harm caused. If you're looking over on the individual tax side, you know, the penalties imposed against individual taxpayers against the Internal Revenue Code, there's three penalties. There's an accuracy penalty, a listed transaction penalty, and a fraud penalty that are all measured directly by reference to the amount of tax. The accuracy penalty is at 20 percent, the listed transaction penalty is at 30 percent, and the fraud penalty is at 75 percent. So you've got that kind of, you know, mapping of whatever the harm amount is over to, you know, the penalty amount. If there's a correlation in connection with these particular tax shelter penalties, there are $1,000, even if there is no harm to the government. If somebody makes a false representation of the penalty, there's a $1,000 penalty. Would this be more akin to a copyright case where, when you can't figure out the amount of damages, you can go for a statutory penalty? Right. And in fact, a lot of the cases are like that, like the Truth in Lending Act cases have the statutory penalties, and several of those show up in the briefs. But that doesn't make them criminal. No. And I don't think any of these penalties are criminal by nature. The issue is whether they're punitive. And the looking at the case law that the government cites, I think the case is called $84,740 in currency. That case is looking at civil forfeitures and saying, you know, are these do the civil forfeitures survive? And I think the Court there made a mistake in looking, when it looked back to Oberlin, a prior Ninth Circuit case, which said that criminal forfeiture abated at death. And they said, well, here is civil forfeiture. It's different. It doesn't abate. They never looked at Schreiber or any of the or Murphy or any of those other cases to look at, you know, whether or not the issue was, whether it's punitive or remedial. The tax cases that have looked at this, there's two tax cases that have looked at the survival of tax penalties, and those are Rauh and Reimer. And I think the Reimer case was the first one. I think the State of Rauh, R-A-U, and Reimer is the second one. And I think in the Reimer case, the Court there pretty much anticipated the Murphy test for remedial, for whether something is remedial, when it says, look. Alitoso, isn't the controlling test the one that was laid down by the Supreme Court in Hudson? Well, when Hudson's looking on the double jeopardy side. Well, I understand that, but the issue is on the other side. Hudson is looking at what is punitive for purposes of the double jeopardy statute, and what they're saying, what they say is that they're looking at the language of the double jeopardy statute, which is no person shall be subject to the same offense twice put in jeopardy of life or limb. And they say that only implicates a very limited set of sanctions. And, in fact, they said only criminal punishment. You know, they looked at other punishments. They said only criminal punishment really satisfies that jeopardy or life of, jeopardy of life or limb. And they look at cases from the 30s through the 70s that suggest that that's the case. Now, if you look over on the other side, on the, like Bakakajian, and the cases that are addressing the excessive fine, whether something is excessive, an excessive fine or not, there they're looking also at whether something is punitive or remedial. And what's the most persuasive case that you have under the excessive fine clause? I think one of the cases that we've got that I think articulates it very well is a case in the United States v. $100,348, and this is in my 28-day letter to the Court, where, in analyzing the civil forfeiture, the Court ruled that because the civil forfeiture was not limited to the extent of the government's loss and was tied to the commission of a crime, it was, in fact, punitive for purposes of the excessive fines clause. And there's a bunch of both civil penalties and forfeiture cases that look at whether something is remedial or punitive in that context. And I think that's very analogous to the survivability issue. I will quickly address the second issue in the case, unless you have further questions on the first one. And that has to do with the attempt by the government to basically get all the billing records over a five-to-ten-year period of a law firm just on the speculation that this guy was involved in promoting tax shelters. They say, look, we want every deposited item of more than $2,000. A foundational case here is a case called Baird v. Korner that says, hey, you just can't go out and get the identity of somebody just because you think that it might be something that you want to know, and, you know, that there is, in fact, an identity privilege. Here, revealing all those records would basically, you know, reveal that every client that this guy has ever had as a lawyer. Kennedy. But aren't those records public already by reason of the fact that they're in the hands of the bank? Well, I think the fact that they're in the bank is an interesting question. And, unfortunately, I didn't come across the case law until the 28-J letter that suggested, look, when you've got a privilege that can only really be the records that people have are in third parties' hands, the records in those hands remain protected. And there's two Second Circuit cases. One is called Local 1814 v. Waterfront Commission, and the other is the recent New York Times v. Gonzalez case that just came out in August of this year. It basically said when a third party plays an integral role in the privilege relationship, those records in the third party's hands remain privileged. And the Waterfront case involved a situation where there was a payroll service that was collecting union dues, and even though that was presumably public, you know, they ruled that, hey, this is integral to the privilege. Likewise, in the New York Times case, the fact that the reporter's phone records were maintained by a telephone company and thus, you know, in the third party's hands, the Court ruled that that was integral to the journalistic enterprise and thus had that kind of privilege. The bank in this case is really a necessary third party. No lawyer can operate without either, one, you know, taking cash, in which case cash transaction reports have to be filed, or two, receiving money in the form of checks and depositing it in bank accounts. It's just it seems to me very integral to the prison. Thank you. I see my time is vanishing quickly. Thank you very much, Your Honor. Good morning, Your Honors. Gretchen Wolfinger for the United States. In response to a question about what the bright line is in this case and how we decide whether the penalties at issue are civil or penal, I think the answer is found in the case on which we rely, Hudson. And the bright line is, what did Congress intend? And it's clear in this case that Congress intended the penalties to be civil because they're within the civil provisions of the Internal Revenue Code. And beyond that, under Hudson, it takes the clearest evidence and the consideration of several factors to overcome that congressional intent. And we would maintain and I appreciate the thought that we're somewhat swimming after our tails because I think it's difficult to reconcile some of these cases. But in Lewis v. Commissioner, this Court relied on the Hudson test in order to determine whether tax penalties were civil or penal and determined that they were in fact civil. And we would argue that that's the line of cases in the analysis that should be followed that's set forth in Hudson. With regard to the – Counsel, what's the line between punitive and criminal? What's the – well – We're trying to draw some bright lines. Well, the obvious bright line would be that there is, in fact, a criminal statute for penalty. And that's not what we have here. These provisions, as I said, are in the civil provisions of the Internal Revenue Code, not the criminal provisions. So that would be a bright line. But in terms, again, restating what I've said, in terms of the analysis that should be applied, it's what Congress intended. And because they placed those provisions in the civil provisions of the Code, that's what it should initially be considered. But that's not determinative. Is it the fact that it's in the civil section of the Code? It's pretty well nearly determinative, Your Honor, because what you have to do is you need to clear – you first look at what Congress intended, which is here. It's in the civil provisions. And under Hudson, you can look at the seven guideposts to determine if there's clear evidence that Congress didn't intend that. And in the analysis in our brief, we say not only isn't there the clearest proof to override this congressional intent, but the seven guidepost factors support the fact that they are intended to be civil, not criminal. Are you saying that it could be, in the real world, highly punitive, but it would still be on the civil side, and you'd have to look after that? I think that what I would say, if you analyze those factors and they indicate that it should be considered civil, it should be considered civil. And I think what Hudson indicated was that there are a number of factors that can cut either way, but the fact that there may be some punitive or deterrent effect associated with a fine is not enough to classify it as penal. There needs to be much more than that. I would move on to the second issue, the attorney-client issue, if there are no further questions on the civil-penal aspect of the case. With regard to the attorney-client privilege issue before the Court, I think it's clear. This Court held in Harris v. United States that there's no privilege that applies to bank records. There's neither attorney-client privilege, and they declined to the Court declined to create a bank-depositor privilege. And I don't think that there's anything else that removes this case from the area of a finding of no privilege. The Court, the Seventh Circuit in U.S. v. BDO Seidman said that if you get information about a shelter, all you get is that the client's participated in the shelter. You don't come anywhere near learning anything about motive or confidential communications between the attorney and the client. And all that would be provided here, even assuming the privilege applied, which we say it doesn't, would be a list of potential clients. In addition, and I believe this Court is aware that we objected to the 28J letter submitted by appellants because of the nature of the letter, more in the nature of a reply brief or supplemental reply brief than a true 28J letter. The cases he relies on, particularly Waterfront, are First Amendment cases, which are somewhat different than the attorney-client privilege. And I believe in Waterfront, the Court eventually determined that the privilege, although circumscribing what the government was looking for in that case, held that the privilege didn't apply. It didn't protect all the information at issue. And we would argue that those are distinguishable, that the attorney-client privilege has been resolved by the decisions of this Court, and that the First Amendment cases aren't relevant. Thank you. Thank you. The case just argued is submitted. Thank both counsel in Reisner v. United States. And we'll next hear argument in Brazel v. Payne.
judges: B. Fletcher, McKeown, Schwarzer